**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-13-115(1) |
| | § | (C.A. No. C-13-335) |
| OSCAR RAMIREZ-GARCIA, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO
VACATE, SET ASIDE OR CORRECT SENTENCE AND
DENYING A CERTIFICATE OF APPEALABILITY**

Pending before the Court is Oscar Ramirez-Garcia's (Ramirez-Garcia) motion to

vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and his memorandum in

support. D.E. 63.[1] The government responded with a motion for summary judgment to

enforce Ramirez-Garcia's plea agreement waiver of the right to file the motion. D.E. 77.

Ramirez-Garcia filed a reply. D.E. 81. For the reasons set forth in this Order, the Court

denies Ramirez-Garcia's motion to vacate. Additionally, the Court denies him a Certificate

of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Docket entries refer to the criminal case.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In January 2013, Border Patrol agents noticed a vehicle driving on the Juanita Ranch at night using only its fog lights, near the Sarita, Texas Border Patrol Checkpoint. D.E. 1. Agents continued to observe the vehicle that was traveling north on dirt roads around the checkpoint. When the vehicle reached a division fence, the driver and passenger got out of the vehicle and walked towards the fence line. Agents believed the men were going to cut the fence, and attempted to detain both men after identifying themselves as Border Patrol Agents. Id. The men returned to their vehicle and attempted to flee. While doing so, the driver attempted to back up rapidly and nearly ran over the agent. The agent fired his weapon. Id.

Sometime later that night, the men were apprehended after they abandoned the vehicle due to tire failure. Traveling with the driver Ramirez-Garcia, and his passenger David Oricio-Sanchez, were six undocumented aliens. Id. After both men were arrested and provided with their Miranda rights in Spanish, the men made statements. Ramirez-Garcia denied he was the driver. He said he was on his way to Houston. Id. Oricio-Ramirez admitted that he was the passenger and was helping Ramirez-Garcia. He also admitted he had previously driven that same vehicle to pick up an alien before their arrest. Id.

Ramirez-Garcia made his initial appearance in federal court the day after his arrest and was appointed counsel shortly thereafter. D.E. 12. Ramirez-Garcia and Oricio-Sanchez were indicted on multiple counts of conspiracy, alien smuggling, and Ramirez-Garcia was also charged with illegal reentry. D.E. 23.

Three weeks later, Ramirez-Garcia plead guilty to conspiracy and to illegal reentry, pursuant to a plea agreement with the government. D.E. 37. In exchange for his guilty plea and his waiver of his right to appeal or file a § 2255 motion to vacate, the government agreed to recommend maximum credit for acceptance of responsibility and recommend a sentence within the applicable guideline range. Id., ¶¶ 1, 2, 7. He was rearraigned that day. D.E. 48.

At rearraignment, Ramirez-Garcia testified that his attorney read the indictment to him, discussed it with him, and that he understood the indictment and possible punishment. D.E. 71 at 14-19. He testified that he had enough time to discuss his case with his attorney, and he was satisfied with counsel's services. Id. at 14-15. The Court advised Ramirez-Garcia of his trial rights, he waived them and waived his right to remain silent. Id. at 16-17. The Court reviewed the indictment, the maximum punishment, and Ramirez-Garcia stated that he understood. Ramirez-Garcia further acknowledged that he had discussed the guidelines and how his sentence would be calculated with his counsel. Id. at 20-21. He denied that he was promised leniency if he plead guilty, denied he was forced or threatened to plead guilty, and denied that he had been promised a specific sentence. Id. at 22-23, 25-26. Ramirez-Garcia testified that his attorney read the plea agreement to him in Spanish, they discussed it and he understood it.[2] Id. at 23. The Court questioned him regarding his waivers of the

---

[2]     4 THE COURT: Is there a plea agreement?
5 MR. BROWN: There is, Your Honor. It's been reduced
6 to writing and signed by the parties.
7 THE COURT: Yes, I think that each of you have before
8 you documents that are entitled Memorandum of Plea
Agreements.
9 Have you seen those documents before, Mr. Orocio?

right to appeal or to file a §2255 motion.[3] He testified he was aware of and understood the

waiver.

Ramirez-Garcia pled guilty and agreed with the factual recitation by the government.

_____

> 10 DEFENDANT OROCIO: Yes.
> 11 THE COURT: Mr. Ramirez?
> 12 DEFENDANT RAMIREZ: Yes.
> 13 THE COURT: And did your attorney read to you in
> 14 Spanish those documents, as well as all other documents in this
> 15 case? Mr. Orocio?
> 16 DEFENDANT OROCIO: Yes.
> 17 THE COURT: Mr. Ramirez?
> 18 DEFENDANT RAMIREZ: Yes.
> 19 THE COURT: And did you discuss this plea agreement
> 20 with your attorney, Mr. Orocio?
> 21 DEFENDANT OROCIO: Yes.
> 22 THE COURT: Mr. Ramirez?
> 23 DEFENDANT RAMIREZ: Yes.
> 24 THE COURT: Do you understand it, Mr. Ramirez?
> 25 Understand the document?
> 1 DEFENDANT RAMIREZ: Yes.

Id., pp. 23-24.

[3]      8 THE COURT: In each of your cases, at Page 3,
> 9 Paragraph 7, you are giving up your right to appeal your
> 10 sentence and conviction, and you're giving up your right to
> 11 file any later motions to the Court requesting that the Court
> 12 modify or vacate your sentence or your conviction. Did you
> 13 know that you were giving up these rights, Mr. Ramirez?
> 14 DEFENDANT RAMIREZ: Yes.
> 15 THE COURT: Mr. Orocio?
> 16 DEFENDANT OROCIO: Yes.
> 17 THE COURT: Do you want to give up those rights,
> 18 Mr. Orocio?
> 19 DEFENDANT OROCIO: Yes.
> 20 THE COURT: Mr. Ramirez?
> 21 DEFENDANT RAMIREZ: Yes.

Id., p. 25.

Id., pp. 29-33. The Court ordered preparation of a Presentence Investigation Report (PSR). Id., p. 33.

The Probation Department prepared the PSR. Probation calculated Ramirez-Garcia's base offense level at 19 which included enhancements for a prior immigration offense, transporting 6 aliens, and for reckless endangerment. D.E. 45, ¶¶ 23-25. Six additional levels were added due to assault on a law enforcement officer and another 2 levels for supervisor/ leader, for a total offense level of 27. Id., ¶¶ 26-27. After credit for acceptance of responsibility, Ramirez-Garcia's offense level totaled 24. Id., ¶¶ 42-45.

Ramirez-Garcia had previous criminal convictions for three immigration offenses resulting in six criminal history points and a criminal history category of III. Id., ¶¶ 47-50. Furthermore, immigration records revealed that Ramirez-Garcia had been previously detained by Border Patrol Agents on 11 occasions between 1997 and 2005, after which Ramirez-Garcia was voluntarily returned to Mexico. Id., ¶ 51. His guideline range was 63 to 78 months on each count with a maximum statutory term of 10 years. Id., ¶¶ 64-65.

Sentencing was held in June 2013. Ramirez-Garcia testified that he had the PSR and he and his attorney discussed it in Spanish. D.E. 72, p. 4. Counsel objected to the six level enhancement for assault on a law enforcement officer. Id., p. 5. The Court heard testimony from the Border Patrol Agent who was nearly injured. The Court found that the driver and passenger assaulted the agent. D.E. 72, pp 57-58. The Court imposed a 78 month sentence on Ramirez-Garcia for each count, to be followed by three years supervised release and a $100 special assessment. The terms of imprisonment to be concurrent. Id., p. 64.

Five days later, the Court resentenced Ramirez-Garcia to 66 months imprisonment,

all other terms to remain the same. D.E. 73. In making that reduction, the Court stated,

> 15 I've determined that during the last -- I did not
> 16 take into account a matter that I think needs to be taken into
> 17 account whenever it can be. This Defendant waived his right of
> 18 appeal?
> 19 MR. BROWN: Yes, Your Honor.
> 20 THE COURT: The plea agreement is a plea agreement
> 21 within the guideline range. I found the guideline range to be
> 22 63 to 78 months. 66 months is a sufficient sentence but not
> 23 greater than necessary to impose an appropriate punishment,
> 24 considering all the factors at Title 18, Section 3553,
> 25 including the advisory guidelines.

Id., p. 3. Ramirez-Garcia timely filed his motion to vacate, set aside or correct sentence.

### III.  MOVANT'S ALLEGATIONS

Ramirez-Garcia brings two global issues with many subparts. D.E. 63. Initially, he

claims that counsel did not give him the PSR until the night before sentencing, which meant

that counsel did not file objection to the offense level or criminal history points. He claims

counsel's conduct constituted ineffective assistance and it prejudiced him. In Ground Two,

Ramirez-Garcia claims that counsel did not provide accurate advice on his sentencing

exposure if he pled guilty. He claims he was told that his sentencing range would likely be

12-16 months, not 63-78 months. He claims that had he known the correct range, he likely

would have proceeded to trial on stipulated facts and the result would have been different.

Ramirez-Garcia further complains that counsel should have challenged his criminal history

calculation. Finally, he claims counsel had an actual conflict of interest.

The government urges the Court to enforce Ramirez-Garcia's waiver of his right to

6

file a § 2255 motion. D.E. 77, p. 14.

## IV.  ANALYSIS

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate,

set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's

jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the

statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under

28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range

of injuries that could not have been raised on direct appeal and would, if condoned, result in

a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir.

1992) (per curiam).

### B.    Ramirez-Garcia Waived His Right to File a Motion to Vacate

Ramirez-Garcia waived his right to file a motion to vacate by his plea agreement. D.E.

37 at ¶ 7. He did not address the waiver in his motion.

Ramirez-Garcia claims that counsel was ineffective before his guilty plea and also at

sentencing. His claims of ineffective assistance do not automatically relieve him of his

waiver of appeal and § 2255 post-conviction proceedings. See United States v. White, 307

F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only

when the claimed assistance directly affected the validity of that waiver or the plea itself").

In White, the Court decided there was "no need to except ineffective assistance of counsel

claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." Id. at 343 (internal citations omitted).

Ramirez-Garcia was questioned at rearraignment regarding his understanding of the charges against him, was informed of the maximum punishment, swore he was not promised leniency for his plea or promised a specific sentence and understood how his sentencing range would be calculated using the sentencing guidelines. He was also questioned regarding the plea agreement, his waiver of his right to appeal and his right to file a § 2255 motion. He testified counsel reviewed the plea agreement with him, they discussed it, he understood it, and understood that he was waiving these rights.

Courts give great weight to a defendant's statements during the plea colloquy. Blackledge v. Allison, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002); see also United States v. Abreo, 30 F.3d 29, 31 (5th Cir. 1994) (placing great weight on defendant's statements during plea); United States v. Maldonado-Rodriguez, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured).

Ramirez-Garcia's testimony at rearraignment confirms that he understood his maximum sentencing exposure and how his sentence would be calculated. His testimony also contradicts his claim that counsel misinformed him of his potential punishment. His

testimony that he understood he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion which is all that is required for his waiver to be enforceable. See Wilkes, 20 F.3d at 653 ("a defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary."). The Court finds that Ramirez-Garcia's plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Id. His claims fall within the scope of his waiver and are barred from consideration.

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ramirez-Garcia has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could

debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Ramirez-Garcia is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Ramirez-Garcia's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 63) is DENIED. He is also denied a Certificate of Appealability.

It is so ORDERED on the 24th day of April, 2014.

Hayden Head

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE